IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| EDWARD DWAYNE FIELDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10-0736-CV-W-ODS |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS**

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for disability and supplemental security income benefits. The Commissioner's decision is affirmed.

I. BACKGROUND

As he did during the entire administrative process, Plaintiff is proceeding pro se. His filings make clear his desire to appeal the Commissioner's final decision, but they fail to specify any allegations of error. The Court will review the Commissioner's decision to ascertain whether it is supported by substantial evidence in the Record as a whole.

Plaintiff was born in February 1963, has some education beyond high school but no formal degrees, and has prior work experience as a produce clerk, warehouse laborer, and housekeeper. He alleges he became disabled effective February 5, 2005, due to a combination of schizophrenia and the continuing effects of a gunshot wound in his right thigh. The Record is largely devoid of medical records, but this appears to be because Plaintiff has generally chosen not to seek medical treatment. Much of Plaintiff's medical background can be gleaned from the report of a consultative exam

conducted by psychologist Kathleen King in July 2006. Plaintiff told Dr. King that in approximately 1993 he was arrested for armed criminal action and sent to Fulton State Mental Hospital where he was diagnosed with schizophrenia. When he was released he did not seek further treatment. At the time of his meeting with Dr. King he was not prescribed any medication. While he reported hearing voices Dr. King found these claims to not be credible and further indicated "there was no indication of psychotic process during this evaluation." She ascertained Plaintiff was able to understand and remember simple instructions, engage in repetitive tasks, and would probably "do better in work environments with limited social contacts." R. at 346-48.

Dr. Charles Kelly performed a consultative physical examination, also in July 2006. Plaintiff did not report any significant limitations. Dr. Kelly confirmed Plaintiff suffered from a "foot drop" in his right foot and contracture in his right ankle. The examination was otherwise normal. R. at 349-51.

In mid-December 2008, Plaintiff went to Western Missouri Mental Health Center seeking an evaluation for stress. He reported experiencing headaches and significant stress due to his financial situation. R. at 391, 399-401. He was evaluated for hypertension at Truman Medical Center (which was confirmed and stabilized, R. at 408-11) and eventually sent home with arrangements made to go to ReDiscover. R. at 392-95. Before going to ReDiscover, Plaintiff returned and reported hearing "threatening" voices. He asked for refills of his prescriptions (which, apparently, he did not really have); he was discharged without medication and told to keep his appointment at ReDiscover. R. at 381-82.

Plaintiff went to ReDiscover approximately one week later. He reported feeling depressed and hearing voices (which he indicated had been occurring for years). He was referred to "Common Ground" (a community support service program administered by ReDiscover) for psychiatric treatment, medication, and therapy. R. at 422. It does not appear that Plaintiff followed through by actually going to Common Ground to get services: there are no records from Common Ground, and Plaintiff did not mention receiving treatment from there at any time.

2

During the hearing Plaintiff testified that he had been performing temporary jobs. While the ALJ concluded that this work did not rise to the level of gainful activity, R. at 11, but it is also noteworthy that Plaintiff did not stop this temporary work due to any physical or mental limitations. R. at 39-40. He testified that he takes Risperdal for schizophrenia, which helps "a little bit," as well as medication for high blood pressure. R. at 41-42. He told the ALJ he still hears voices "every other day or so." R. at 42. Plaintiff also testified that the effects of the gunshot wound limit him to standing for ten to fifteen minutes but he identified no other limitations. R. at 44-45.

The ALJ posed a hypothetical question to a vocational expert ("VE"). She was asked to consider a person of Plaintiff's age, education and work experience who could do no more than light work, could stand and walk six hours in a day, sit six hours in a day, and needed to be limited to simple unskilled work. The VE testified such an individual could not return to their past relevant work (because it was all performed at the medium or heavy exertional levels), but such an individual could work as a retail marker, cashier, or electronics sub-assembler. R. at 51-52.

Like the Court, the ALJ began his analysis of the facts by noting Plaintiff's medical records were "scant." R. at 12. Based on Plaintiff's statements to Dr. King and testimony at the hearing, the ALJ found Plaintiff suffered from mild restrictions in daily living, moderate difficulties in persistence or pace, and no episodes (much less repeated episodes) of decompensation. R. at 13. The evidence in the Record also led the ALJ to find that Plaintiff's condition had not changed significantly after his alleged onset date, which was significant because Plaintiff was able to work before February 2005. Plaintiff's testimony established that he was able to engage in normal activities of daily living and failed to reveal any significant limitations. Plaintiff's testimony also led the ALJ to believe that whatever limitations existed were ameliorated (at least to a certain extent) when Plaintiff took his medication. R. at 14-15. The ALJ concluded Plaintiff retained the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently, sit for six hours a day and stand for six hours a day, and was limited to simple unskilled work. Based on the VE's testimony, the ALJ

3

found Plaintiff could not perform his past work but retained the ability to perform other work in the national economy. R. at 16.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

There is no evidence in the Record that contradicts the ALJ's conclusions. In fact, there is no evidence that would demonstrate Plaintiff's limitations are greater than those found by the ALJ. Plaintiff's subjective complaints do not indicate an inability to work, and there are no doctor reports (apparently, because Plaintiff did not obtain medical treatment) confirming the existence of serious limitations. While Plaintiff may have started receiving treatment in December 2008, there are no records from ReDiscover or Common Ground substantiating this fact. Moreover, the hearing was held on February 20, 2009, and the ALJ's decision was issued on April 29, 2009 – so, by the time of the decision Plaintiff would have been receiving treatment for no more than four months. This could not establish disability commencing in February 2005, particularly given that Plaintiff's condition did not change on that date and Plaintiff was able to work before that date. Based on this Record, the Court is compelled to conclude the Commissioner's decision is supported by substantial evidence.

## III. CONCLUSION

The Commissioner's final decision denying benefits is affirmed.

IT IS SO ORDERED.

                                          /s/ Ortrie D. Smith
                                          ORTRIE D. SMITH, SENIOR JUDGE
DATE: May 10, 2012                     UNITED STATES DISTRICT COURT